UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------X   Case No.: 1:23-cv-9031
KRISTIN OLMSTEAD,

        Plaintiff,

                                        **COMPLAINT**

-against-

                                        Plaintiff Demands a

PROOF TECHNOLOGY, INC.,               Trial by Jury

        Defendant.
----------------------------------------------X

Plaintiff, by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the New York Labor Law, New York Labor Law § 740, *et seq.* ("NYLL"), seeking damages to redress the injuries Plaintiff has suffered as a result of being retaliated against and unlawfully terminated due to her complaints that Defendant PROOF TECNHONOLY, INC. (hereinafter "PROOF") was illegally serving documents from various law firms and governmental agencies in violation of New York City Department of Consumer and Worker Protection ("NYC DCWP") regulations and fraudulently depositing amounts into Plaintiff's account, without her consent, for the purpose of concealing the same.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

3. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff is a female resident of the County of Nassau, New York.

5. At all times material, Defendant PROOF was and is a domestic business corporation duly incorporated under the laws of the State of Delaware.

6. At all times material, Defendant PROOF was and is a foreign business corporation authorized to conduct business, and does conduct business, under the laws of the State of New York.

7. At all times material, Defendant PROOF was and is a nationwide service of process company.

8. At all times material, Plaintiff was an employee of Defendant PROOF.

## MATERIAL FACTS

9. In or around May 2020, Plaintiff began working for Defendant PROOF as a "Process Server," where she was considered an independent contractor and paid per document served.

10. In or around June 2021, based on her strong performance, Defendant PROOF offered, and Plaintiff accepted, a full-time position as a "Territory Manager," with an annual salary of $48,000.

11. Plaintiff's job responsibilities included speaking with clients and process servers and overseeing approximately one hundred independent contractors throughout the state of New York, specifically New York City.

12. Pursuant to New York City Administrative Code § 20-403(b), "it shall be unlawful for any process serving agency to assign or distribute process to individual process servers for actual service in the city of New York without a license therefore."

13. However, in or around June 2021, Plaintiff realized that Defendant PROOF was actively violating this section of the New York City Administrative Code § 20-403(b), as its employees and independent contractors had served approximately 6,000 legal documents without the statutorily required licenses.

14. Accordingly, later that day, Plaintiff emailed Senior Vice President, Julie McGinnis, notifying her of the above-mentioned violations.

15. Then, Ms. McGinnis called Plaintiff expressing her concerns about Defendant PROOF being sanctioned for illegally serving thousands of legal documents.

16. In or around late June 2021, Ms. McGinnis assured Plaintiff that Defendant PROOF was in the process of obtaining its NYC DCWP license.

17. However, from June to October 2021, Defendant PROOF continued to serve over one hundred documents illegally in violation of New York City Administrative Code § 20-403(b).

18. In or around early October 2021, in fear of Defendant PROOF requesting Plaintiff to act illegally, Plaintiff obtained the requisite licensure and created her own agency.

19. From October 2021 to March 2022, Defendant PROOF funneled all New York City serves through Plaintiff's agency.

20. During this period of time, Plaintiff continued to ask Defendant PROOF about the status of Its NYC DCWP license.

21. In or around late March 2022, because of her strong work performance, and to try to quell Plaintiff's concerns about Defendant PROOF's history of illegal process serving, Plaintiff was promoted to "Server Operations Manager," with an annual salary of $80,000.

22. As a condition of the promotion, Ms. McGinnis and Chief Operating Officer, Liam Kirby, asked Plaintiff to shut down her agency. Plaintiff accepted and made her agency inoperable.

23. In or around early April 2022, Defendant PROOF changed Plaintiff's territories from the State of New York to the State of Florida and all other United States territories.

24. In reality, Defendant PROOF assigned Plaintiff alternate territories to limit her access to information regarding serves conducted in the State of New York, so that she could not raise complaints about Defendant PROOF's non-compliance with NYC DCWP rules.

25. From March 2022 to November 2022, based on her strong performance, Plaintiff received increased job responsibilities, including training new employees.

26. However, throughout this time, Plaintiff continued to verbally express her concerns about Defendant PROOF's compliance with NYC DCWP rules to Ms. McGinnis.

27. Then, on or about November 29, 2022, Plaintiff received a Slack message from Ms. McGinnis advising her that "erroneous deposits" had been deposited into her personal bank account, which she used exclusively for work.

28. For the next two weeks, Plaintiff and Ms. McGinnis emailed back and forth about these deposits and discussed Plaintiff potentially writing a check to Defendant PROOF for the erroneously deposited amounts.

29. Plaintiff requested that Defendant PROOF provide her with documentation to confirm that funds were in fact erroneously deposited into Plaintiff's account.

30. Accordingly, on or about December 12, 2022, Ms. Huang sent Plaintiff a spreadsheet issued by Defendant PROOF's payment processing platform, Stripe, which purportedly detailed the amounts deposited into Plaintiff's personal account.

31. However, after requesting her own spreadsheet from Stripe and comparing the two with her personal server bank statements, Plaintiff revealed several discrepancies, including that Defendant PROOF had previously misclassified her employment status.

32. Later that day, Plaintiff emailed Senior People Operations Manager, Selena Rojas:

> "This detailed review reinforces some of my concerns made during our meeting including, yet not limited to: [Defendant PROOF's] process/procedures/tech inadequacies led to erroneous deposits into my personal account that I did not authorize… Please recognize that given the difference between the information that [Defendant PROOF] has/provided and what Stripe has/provided means that this very well may be a system wide issue affecting more than myself and the employees already known to have suffered this type of event, affecting all severs across the platform. All funds that [Defendant PROOF] had erroneously placed in my account have now been refunded/reversed to [Defendant PROOF]."

33. To effectuate the reversal, Plaintiff's bank reported the amount to the United States Securities and Exchange Commission ("SEC"), which requires a three step process through the Federal Reserve to clear. Plaintiff verbally advised Ms. Rojas of same.

34. However, Ms. Rojas demanded Plaintiff immediately stop the reversal and send a check to Defendant PROOF.

35. Plaintiff was alarmed by Ms. Rojas' hostility and became concerned of potential legal implications and widespread fraudulent misconduct to herself and other Defendant PROOF employees. As such, Plaintiff reported Defendant PROOF's misconduct to the New York Department of Labor ("NYDOL") and NYC DCWP via the anonymous tip portal.

36. On or about December 19, 2022, Plaintiff had a virtual meeting with Ms. Rojas and Christian Pryor. Here, Plaintiff advised Defendant PROOF that she reported the above-described activity to the SEC, NYDOL, and NYC DCWP.

37. During this meeting, Mr. Kreloff confirmed that Mr. Wachocki was looking into the erroneous deposits.

38. On or about December 20, 2022, Plaintiff emailed Mr. Pryor screenshots of her banking statements and the reversal.

39. Then, on or about January 5, 2023, Plaintiff was terminated and offered severance via email, which stated:

> "We have met several times regarding the erroneous server pay deposits and unfortunately we need to separate your employment today. We thank you for all you have done for us during your time at [Defendant PROOF] and for your cooperation with returning the funds. We have received confirmation that all identified transactions have been returned. As a company we depend on the trust in our Server Operations Managers and have the expectation for them to be honest, acting with integrity to ensure our billing and payment processes are accurate. That trust was breached when you failed to report the erroneous transactions. I'm sorry it has come to this and I hope that as you think of this, you'll realize this was the right thing to do for both sides."

40. However, this was pretext. Plaintiff had no idea of the erroneous deposits and took prompt action to return the funds immediately following Defendant PROOF's placing her on notice of such transactions.

41. In reality, Defendant PROOF wanted to "get rid of" Plaintiff because they perceived her as a "whiner" or "complainer" who would expose their illegal activity.

42. Plaintiff was retaliated against for voicing her concerns relating to Defendant PROOF's blatant misconduct to the SEC, NYDOL, and NYC DCWP.

43. Defendant PROOF terminated Plaintiff because it prioritized its monetary gains with respect to illegally serving documents and committing fraud over addressing Plaintiff's protected "whistleblower" complaints.

44. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

45. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

46. Defendant PROOF's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

47. As such, Plaintiff demands punitive damages as against Defendant PROOF.

### AS A FIRST CAUSE OF ACTION FOR RETALIATION
### UNDER THE NEW YORK LABOR LAW

48. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

49. New York Labor Law § 740 states, in pertinent part,

> 2. Prohibitions. An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following:
>
> (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;
> (b) …
> (c) objects to, or refuses to participate in any such activity, policy or practice.

50. Defendant PROOF violated this section hereto as set forth by terminating Plaintiff's employment after she complained that she reasonably believed that Defendant PROOF's practices constituted violations of the law.

51. Plaintiff is entitled to the maximum amount allowed under this statute.

### JURY DEMAND

52. Plaintiff demands a trial by jury.

   **WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.   Declaring that Defendant is in violation of the NYLL;

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's

unlawful practices and conduct and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
       October 13, 2023

                                             PHILLIPS & ASSOCIATES,
                                             ATTORNEYS AT LAW, PLLC

By: *s/ Jesse S. Weinstein, Esq.*
     Jesse S. Weinstein, Esq.
     45 Broadway, Suite 430
     New York, New York 10006
     (212) 248-7431
     jweinstein@tpglaws.com